# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN and EMILIE WETICK, individually, | ) | |
| and as natural parents, | ) | |
| guardians, and next friends of | ) | |
| S.W., a minor child, | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | Case No. **2:17-cv-02278-JPM-tmp** |
| | ) | |
| NISSAN MOTOR COMPANY, LTD., | ) | |
| GRACO CHILDREN'S PRODUCTS, INC., | ) | |
| NEWELL BRANDS, INC., AND JOHN DOE | ) | |
| | ) | **JURY DEMANDED** |
| **DEFENDANTS**. | ) | |

## SECOND AMENDED COMPLAINT

COME NOW the Plaintiffs, by and through counsel and file this their second amended complaint against the Defendants, Nissan Motor Company, Ltd., Graco Children's Products, Inc. and Newell Brands, Inc., and would show to the Court:

## I.

## PARTIES, JURISDICTION AND VENUE

1. The Plaintiffs, Steven Wetick, Emilie Wetick, individually and as natural parents, guardians and next friends of minor child, S.W., at all times pertinent herein, were adult citizens and residents of Tennessee with a mailing address of 1404 Glen Oak, Memphis, TN 38125.

2. The Defendant Nissan Motor Company, Ltd., a foreign corporation, is located at 1-1 Takashima 1-chrome, Nishi-ku, Yokohama-shi, Kanagawa 220-8686 Japan, and was the manufacturer and/or seller of the Nissan Altima involved herein, and may be served with process under the Hague Service Convention.

3.      Defendant Graco Children's Products, Inc., is a corporation with its principal manufacturing address located at 4110 Premier Drive, High Point, NC, 27265, its principal office located at 6655 Peachtree Dunwoody Road, Atlanta, GA 30328-1606, and registered agent located at 40 Technology Parkway South Suite 300, Gwinnett, Norcross, GA 30092, and was the manufacturer and/or seller of the Graco car/booster seat involved herein.

4.      Defendant Newell Brands, Inc., the parent company of Graco Children's Products, Inc., is a corporation with its principal office located at 6655 Peachtree Dunwoody Road, Atlanta, GA 30328-1606, and registered agent (Georgia) located at 40 Technology Parkway South Suite 300, Gwinnett, Norcross, GA 30092, registered agent (North Carolina) located at Corporation Service Company, 327 Hillsborough Street, Raleigh, NC 27603-1725, and registered agent (IL) located at Illinois Corporation Service, 801 Adlai Stevenson Dr., Springfield, IL 62703, and was the manufacturer and/or seller of the Graco car/booster seat involved herein.

5.      John Doe is an as yet unidentified third party that manufactured and/or sold the Graco car seat, Turbo HB, to the Weticks for S.W.'s use.

6.      The Plaintiffs' causes of action arise as a result of the catastrophic injuries of their child, S.W., suffered as a result of the manufacture and/or sale of defective and/or unreasonably dangerous products, namely the 2008 Nissan Altima and the Graco car/booster seat, Turbo HB.

7.      Jurisdiction and venue are appropriate in this Court because the products were placed into the stream of commerce in Tennessee, the wreck and injuries occurred in Tennessee, and diversity jurisdiction exists. The Plaintiffs are residents of Tennessee, Nissan Motor

2

Company, Ltd. is a company headquartered in Japan, Graco Children's Products, Inc. has a registered agent in North Carolina, and Newell Brands, Inc., has a registered agent in Georgia.

## II.

## <u>PREDICATE FACTS</u>

8.    On or about April 21, 2016, at approximately 10:55a.m., Emilie Wetick was the owner and operator of a 2008 Nissan Altima automobile, VIN 2MEFM75W04X611091 with Tennessee registration for the year 2016, license plate number 998SVT.

9.    Her daughter, S.W., a minor child, was the passenger in said car, which was manufactured and/or sold by the Defendant, Nissan Motor Company, Ltd., a foreign corporation.

10.    On said date and at the stated time, Victor Yeager was the owner and operator of a 2004 Mercury Grand Marquis with Tennessee registration for the year 2016, license plate number 1554DD9.

11.    On said date and at the stated time, Emilie Wetick was operating her vehicle east bound on Walnut Grove and was completely within the outside lane adjacent to the right hand shoulder.

12.    Another motorist, Jonathan Halley, was also traveling eastbound on Walnut Grove and was in inside lane for traffic.

13.    At the time of the wreck herein, Victor Yeager was traveling westbound on Walnut Grove, when he crossed over the median traveling west in the east bound lanes, striking the vehicle driven by Halley and causing his vehicle to be T-boned by Emilie Wetick.

14.     At all times pertinent herein, Emilie Wetick was operating her vehicle in a prudent and cautious manner and was in no way contributorily or comparatively negligent.

15.     Minor child S.W. was in the right rear passenger seat of the 2008 Nissan Altima, seated in a Graco Children's Products, Inc. Turbo HB car seat, Model 1908157 JJ, manufactured May 11, 2015.

16.     Defendant Nissan Motor Company, Ltd. knew that it was likely/foreseeable that minor children such as S.W. would be riding as passengers in the rear seat of the 2008 Nissan Altima purchased, owned and operated by Emilie Wetick.

17.     Defendants Graco Children's Products, Inc. and Newell Brands, Inc. knew that it was likely/foreseeable that minor children such as S.W. would be riding as passengers using the car/booster seat, Graco Turbo HB, in the rear seat of automobiles.

18.     Defendant Nissan Motor Company, Ltd. knew that it was foreseeable that an automobile such as the 2008 Nissan Altima purchased, owned and operated by Emilie Wetick would be involved in collisions and had a duty to design and manufacture such automobile to be reasonably safe for passengers, including minors such as S.W..

19.     Defendants Graco Children's Products, Inc. and Newell Brands, Inc. knew that it was foreseeable that a car/booster seat such as the Turbo HB used by S.W. would be involved in collisions and had a duty to design and manufacture such products to be reasonably safe for children, including minors such as S.W..

20.     At all times pertinent herein, the Defendant Nissan Motor Company, Ltd. knew that its cargo retention barrier and/or the rear seat back design, including those located in the rear of the 2008 Nissan Altima, were designed for use by children passengers and that the cargo

retention barrier and/or the rear seat back design in the rear passenger's seat of the 2008 Nissan Altima, posed a substantial and unjustifiable risk to children the age and size of S.W., including S.W..

21. At all times pertinent herein, the Defendants Graco Children's Products, Inc. and Newell Brands, Inc. knew that its car/booster seat Turbo HB, lacked sufficient warnings to notify consumers, including the Weticks, of severe injuries that could occur if the armrests of the car/booster seat failed, and knew that these seats were designed for use by children passengers and that the car/booster seat posed a substantial and unjustifiable risk to children the age and size of S.W., including S.W..

22. Defendant Nissan Motor Company, Ltd. failed to warn of the danger posed to children by the defective cargo retention barrier and/or the rear seat back design in the 2008 Nissan Altima automobile sold to Emilie Wetick.

23. Defendants Graco Children's Products, Inc. and Newell Brands, Inc. failed to warn of the danger posed to children by the Turbo HB booster/car seat sold to Emilie Wetick for S.W.'s use.

24. At all times pertinent herein, S.W., a minor child, was restrained in the right rear passenger seat by the car/booster seat Turbo HB, manufactured and/or sold by Graco Children's Products, Inc., and/or Newell Brands, Inc. She was secured by it and the lap and shoulder harness of the factory installed seat belt/safety restraint system of the 2008 Nissan Altima manufactured by the Defendants Nissan Motor Company, Ltd.

25. Plaintiffs aver that the injuries and damages suffered by S.W., a minor child, were caused by the defective and/or unreasonably dangerous products manufactured and/or sold by the

5

Defendant, Nissan Motor Company, Ltd., in that the cargo retention barrier and/or the rear seat back design by its design and/or installation in the 2008 Nissan Altima was inappropriate, defective and/or unreasonably dangerous for S.W. More specifically, the rear split bench seat located in the 2008 Nissan Altima failed to remain latched in a foreseeable collision, which impacted the geometry of the seat and seat belt on the occupants of the vehicle, including S.W. The seat back failure caused great force to be exerted on S.W.'s car seat, resulting in the movement of the car seat. The seat back failed to remain upright and latched during the collision, and instead became unlatched, resulting in a higher likelihood of injury for the occupants of the vehicle, including S.W.

26.     Plaintiffs aver that the injuries and damages suffered by S.W., a minor child, were caused by the defective and/or unreasonably dangerous products manufactured and/or sold by the Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., in that the Turbo HB booster/car seat, by its design and/or installation, was inappropriate, defective and/or unreasonably dangerous for S.W. More specifically, the Graco car seat was designed and manufactured in such a way that its performance was dependent on the anchoring of two screws in the armrests of the seat, which were not placed in the armrests at the time of packaging/delivery. Graco failed to warn of the dangers of failing to secure/anchor such screws into the armrests of the child seat, and the existing warnings were grossly inadequate for the dangers present related to the screws.

27.     S.W., the minor child, was injured by the defective or unreasonably dangerous cargo retention barrier and/or the rear seat back design of the 2008 Nissan Altima, manufactured and produced by the Defendant, Nissan Motor Company, Ltd., and being used for its

intended use, to protect the occupants of a vehicle in a crash. Emilie Wetick was operating said 2008 Nissan Altima as directed by Defendant, Nissan Motor Company, Ltd. or its agents for its foreseeable and recommended use as a passenger automobile. The cargo retention barrier and/or the rear seat back design was being used as a might be reasonably expected and as directed and/or foreseen by Defendant, Nissan Motor Company, Ltd. and/or its agents.

28. S.W., the minor child, was injured by the defective or unreasonably dangerous Turbo HB car/booster seat, manufactured and produced by the Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc., and being used for its intended use, to protect S.W. in the event of a crash. Emilie Wetick was operating the Turbo HB as was intended by Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., or their agents for its foreseeable and recommended use as a car/booster seat, and the Turbo HB was being used as a might be reasonably expected and as directed and/or foreseen by Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., and/or their agents.

29. The cargo retention barrier and/or the rear seat back design system of the 2008 Nissan Altima was defective and/or unreasonably dangerous to those reasonably expected to be exposed to it, including S.W., a minor child, and was improperly designed, manufactured, or labeled in such a way causing it to be unreasonably dangerous or defective. More specifically, the seat back failed to remain upright, secured and latched during the collision, resulting in injuries to S.W., the minor child, who was the passenger sitting directly in front of the seat back.

30.     The car/booster seat Turbo HB was defective and/or unreasonably dangerous to those reasonably expected to be exposed to it, including S.W., a minor child, and was improperly designed, manufactured, or labeled in such a way causing it to be unreasonably dangerous or defective. More specifically, there were no screws located in the armrests of the Turbo HB seat as were required for safety. The car seat was designed and/or manufactured in such a way that its performance was dependent upon the anchoring of those screws. The armrest failed to remain attached to the seat, and detached during the foreseeable collision, failing to protect the occupant of the seat, S.W., and resulting in injuries to her. The absence of the armrest caused S.W. to experience forces and movement that would have been restricted had the car seat properly worked, and further caused S.W. to be injured in ways that she, more likely than not, would not have been had the car seat worked properly.

31.     The subject 2008 Nissan Altima was manufactured, sold, distributed, purchased, and used by Emilie Wetick in an unaltered and unchanged condition.

32.     The subject Turbo HB car/booster seat was manufactured, sold, distributed, purchased, and used by S.W. in an unaltered and unchanged condition.

33.     The 2008 Nissan Altima, purchased and used as described herein, was less than ten (10) years old.

34.     The Turbo HB car/booster seat, purchased and used as described herein, was less than ten (10) years old.

35.     As a result of the defective and/or unreasonably dangerous nature of the cargo retention barrier and/or the rear seat back design system in the 2008 Nissan Altima manufactured and/or sold by Defendant, Nissan Motor Company, Ltd., Plaintiff S.W., a minor child,

suffered severe and permanent injuries and other damages as set forth more fully hereinafter.

36. As a result of the defective and/or unreasonably dangerous nature of the Turbo HB car/booster seat, manufactured and/or sold by Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., Plaintiff S.W., a minor child, suffered severe and permanent injuries and other damages as set forth more fully hereinafter.

**III.**

**A.**

**CAUSES OF ACTION AGAINST DEFENDANT,**

**NISSAN MOTOR COMPANY, LTD.**

37. Plaintiffs hereby incorporate, in its entirety, each and every paragraph hereinabove by reference as if fully set forth herein.

38. Plaintiffs, individually and as natural parents, guardians and next friends of S.W., a minor child, sue the Defendant, Nissan Motor Company, Ltd. under the theories of negligence, comparative fault, gross negligence, misrepresentation, breach of express and implied warranties of merchantability and fitness for a particular purpose and, further, avers that said Defendant is strictly liable, all pursuant to T.C.A. §29-28-101, et. seq., for the personal injuries, medical expenses, permanent impairment and disfigurement, loss of the enjoyment of life, lost wages, and pain and suffering, mental, physical and emotional, past and future complained of herein.

39. Defendant Nissan Motor Company, Ltd. is strictly liable for injuries and losses suffered by the Plaintiffs' minor child, S.W., in that the cargo retention barrier and/or the rear seat back

design system of the 2008 Nissan Altima was a defective and/or unreasonably dangerous product when sold and, further, Defendant Nissan Motor Company, Ltd. insufficiently warned the purchasers and users thereof of the danger of the failure of the cargo retention barrier and/or the rear seat back design system of said car to children the size of S.W., the minor child.

40.     Defendant Nissan Motor Company, Ltd., through promotional literature, advertising and instructions to users, promoted the product and designs as being safe for use by children when the same was untrue and known by Defendant to be untrue, the failure of the cargo retention barrier and rear seat back being known to it, and having been designed and/or manufactured in such a manner to pose an unreasonable danger to children such as S.W., and, therefore, are liable to the Plaintiffs for their negligent and/or intentional misrepresentation.

41.     Defendant Nissan Motor Company, Ltd. was on actual and/or constructive notice of the defective and/or dangerous nature of its product, knew of the dangers associated therewith, and negligently and/or intentionally failed to warn consumers such as Emilie Wetick and/or other users of the defective and/or dangerous nature of its product and failed to take other steps reasonably necessary and foreseeable to protect those who might be exposed thereto, including S.W., a minor child, from harm.

42.     Defendant, therefore, is liable for the following acts and/or omissions as defined by the Restatement of Torts, Second:

A.   §388.  Chattel Known to be Dangerous for Intended Use.

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with

10

the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and,

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

B.  §394.  Chattel known to be Dangerous.

The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge.

C.  §395.  Negligent Manufacture of Chattel Dangerous Unless Carefully Made.

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

D.  §402A.  Special Liability of Seller of Product of Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not brought the product from or entered into any contractual relation with the seller.

E.    §402.  B.  Misrepresentation by Seller of Chattels to Consumer

One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentations, even though:

(a) it is not made fraudulently or negligently, and

(b) the consumer has not brought the chattel from or entered into any contractual relation with the seller.

44.    Defendant Nissan Motor Company, Ltd., by its negligent and/or intentional acts as aforesaid, violated Tennessee Code Annotated §47-2-314 and said acts constitute negligence *per se*, particularly in the design and manufacture of the cargo retention barrier and/or the rear seat back design system, specifically, with respect to warnings of the dangerous properties of its cargo retention barrier and/or the rear seat back design system to children, and its risk of failure, including S.W.. The act provides:

**T.C.A. §47-2-314.  Implied warranty -- Merchantability -- Usage of trade. --**

(1)    Unless excluded or modified (§47-2-316), a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section, the serving for value of food or drink to be consumed either on the premise or elsewhere is a sale.

(2)  Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

(b) In the case of fungible goods, are of fair average quality within the description; and

© are fit for the ordinary purpose for such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmation of fact made on the container or label if any.

(3)     Unless excluded or modified (§47-2-316) other implied warranties may arise from course of dealing or usage of trade.

45.     This Defendant violated Tennessee Code Annotated, §47-2-313, which the Defendant violated by making certain express warranties as shown through advertisements, catalogues and website touting its product and by information provided with the product at or about the time of its sale, which warranties proved to be false and/or that the said Defendant violated or breached.  That act provides:

**T.C.A. §47-2-313.  Express warranties by affirmation, promise, description, sample. --**

(1) Express warranties by the seller are created as follows:
     (a) Any affirmation of fact or promise made by the sellers to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

     (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

     © Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

46.     Plaintiffs aver that there was in existence, T.C.A. §47-2-315, Implied warranty -- Fitness for particular purpose, and that this Defendant breached such implied warranty, as the product,

specifically the cargo retention barrier and/or the rear seat back design system in the 2008 Nissan Altima, as sold to Emilie Wetick, was not fit for the purpose for which it was sold, to ensure and secure the safety for passengers of the vehicle, including children, and its purpose was to remain upright, secured and latched during a collision, but was defective and/or dangerous and caused serious injury to S.W., the minor child:

**T.C.A. §47-2-315, Implied warranty -- Fitness for particular purpose. --** Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the sellers' skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose...

47.     This Defendant was negligent, reckless and/or liable for comparative fault in that Defendant failed to properly design, formulate, manufacture, make, monitor, test, warn about, and/or instruct in the use of the product, and as a result, sold the product knowing that it was unreasonably dangerous and/or defective for use by consumers, including children the age and size of S.W., the minor child.

48.     This Defendant is strictly liable for the design, manufacture, and marketing, of the2008 Nissan Altima, and placing it into the stream of commerce, when it was defective and/or unreasonably dangerous for its reasonably foreseeable uses.

49.     At the time of the incident described herein and of the manufacture and sale of the product, this Defendant was engaged in the business of designing, manufacturing, assembling, producing, advertising, inspecting, marketing, distributing, and/or selling vehicles, including the 2008 Nissan Altima that Emilie Wetick was driving and in which S.W. was a passenger, for use by members of the general public.

50. This Defendant designed, manufactured, assembled, produced, marketed, placed into the stream of commerce, warranted, and sold a defective and/or unreasonably dangerous 2008 Nissan Altima, knowing that the product would reach ordinary consumers, including Emilie Wetick and S.W., without substantial change in the condition in which it was sold.

51. At the time the 2008 Nissan Altima left the Defendant's control, it was defective and/or unreasonably dangerous because the cargo retention barrier and/or the rear seat back design system was known to fail and to come apart during a collision, resulting in injury to occupants in a crash.

52. Prior to the incident described herein, the 2008 Nissan Altima had not been altered, modified, changed, or damaged and was in the substantially same condition as of the date of its original manufacture, sale, and delivery.

53. At the time of the incident described herein, Emilie Wetick and S.W. were using the 2008 Nissan Altima for its intended purpose and in a reasonably foreseeable manner, and her injuries, and damages, which resulted, were reasonably foreseeable by Defendant.

54. The 2008 Nissan Altima was defective and/or unreasonably dangerous including, but not limited to, the following ways:

   a.     failure to incorporate known safeguards to protect occupants during foreseeable driving operations;

   b.     failure to recall, replace, or repair the cargo retention barrier and/or the rear seat back design system which Defendant knew or should have known was defectively designed and/or unreasonably dangerous;

   c.     failure to incorporate known safety measures to prevent malfunction;

d.      failure to properly test the 2008 Nissan Altima;

e.      failure to properly inspect/test/repair/recall/replace the cargo retention barrier and/or the rear seat back design system  of the 2008 Nissan Altima;

f.      failure to adequately warn the public of the dangerous failure;

g.      failure to design and/or use a safer, existing alternative, design  for the 2008 Nissan Altima.

55.   The defects existing in the 2008 Nissan Altima subjected ordinary consumers, including S.W. and Emilie Wetick, to an unreasonable risk of harm, and serious injury.

56.   Due to the defective and/or unreasonably dangerous design and manufacture of the 2008 Nissan Altima, the cargo retention barrier and/or the rear seat back design system was prone to fail, resulting in injury.

57.   Defendant knowingly failed to properly test and inspect the 2008 Nissan Altima before and during design, manufacture and sale of the product to the public and/or knowingly placed the defective and/or unreasonably dangerous product into the stream of commerce.

58.   Defendant knew and/or in exercising reasonable care should have known that the 2008 Nissan Altima was a defective and/or unreasonably dangerous product when being used for its intended purposes and in a reasonably foreseeable manner.

59.    A reasonably prudent manufacturer with knowledge of the 2008 Nissan Altima's dangerous failure of the cargo retention barrier and/or the rear seat back design system and lack of safeguards would not have placed the product in the stream of commerce.

60.   At the time of the incident described herein, the 2008 Nissan Altima was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer

or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics.

61. As the direct and proximate result of the Defendant's defective and/or unreasonably dangerous product, the Plaintiffs' minor child, S.W., was severely injured, entitling Plaintiffs to recover judgment for compensatory damages in an amount deemed reasonable by the jury.

62. The 2008 Nissan Altima was unreasonably dangerous and/or defective because this Defendant failed to provide an adequate warning to consumers, operators, and the public, including Plaintiffs, regarding the hazards and risks associated with the reasonable and foreseeable operation of the 2008 Nissan Altima's cargo retention barrier and/or the rear seat back design system.

63. The 2008 Nissan Altima possessed unreasonably dangerous and/or defective propensities, described hereinabove, which caused severe personal injuries, and this Defendant failed to use reasonable care to provide an adequate warning of the dangerous characteristics of the cargo retention barrier and/or the rear seat back design system to consumers and purchasers of the 2008 Nissan Altima, including Plaintiffs.

64. Drivers of the 2008 Nissan Altima, including Plaintiff Emilie Wetick, did not know and should not have known that the failure of the cargo seat barrier and seat back system could occur, which had the potential to cause injuries and damages.

65. Plaintiffs' expectations that the 2008 Nissan Altima would work properly, and that the cargo retention barrier and/or the rear seat back design system would not fail in a crash, were the

reasonable expectations of an ordinary consumer that would have ordinary knowledge of the 2008 Nissan Altima's characteristics.

66. As the direct and proximate result of Defendant's failure to warn, Plaintiffs sustained severe injuries, and damages, for which Plaintiffs are entitled to recover judgment in an amount deemed reasonable by the jury for compensatory damages.

## B.

## CAUSES OF ACTION AGAINST DEFENDANTS,

## GRACO CHILDREN'S PRODUCTS, INC., AND/OR NEWELL BRANDS, INC.

67. Plaintiffs hereby incorporate, in its entirety, each and every paragraph hereinabove by reference as if fully set forth herein.

68. Plaintiffs, individually and as natural parents, guardians and next friends of S.W., a minor child, sue the Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., under the theories of negligence, comparative fault, gross negligence, misrepresentation, breach of express and implied warranties of merchantability and fitness for a particular purpose and, further, avers that said Defendants are strictly liable, all pursuant to T.C.A. §29-28-101, et. seq., for the personal injuries, medical expenses, permanent impairment and disfigurement, loss of the enjoyment of life, lost wages, and pain and suffering, mental, physical and emotional, past and future complained of herein.

69. Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc. are strictly liable for injuries and losses suffered by the Plaintiffs' minor child, S.W., in that the Turbo HB car/booster seat manufactured by these Defendants was a defective and/or unreasonably dangerous product when sold and, further, Defendants Graco Children's Products, Inc.,

and/or Newell Brands, Inc. insufficiently warned the purchasers and users thereof of the danger of the failure of the Turbo HB car/booster seat to children the size of S.W., the minor child. More specifically, the seat required screws in the armrests to be placed, and performance of the seat was dependent upon the anchoring of these two screws in the armrests. The Defendants' warnings of the dangers of failing to secure/anchor these screws into the armrests were woefully and grossly inadequate. As a result, the armrest became disconnected during the collision, failing to protect S.W. from injury due to its absence, and as a result, S.W. experienced significant forces that otherwise would have been restricted, and suffered injuries that she more likely than not, would have avoided with proper protection.

70.     Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc., through promotional literature, advertising and instructions to users, promoted the product and designs as being safe for use by children when the same was untrue and known by Defendants to be untrue, the failure of the Turbo HB armrest and system being known to them, and having been designed and/or manufactured in such a manner to pose an unreasonable danger to children such as S.W., and, therefore, are liable to the Plaintiffs for their negligent and/or intentional misrepresentation. Defendants failed to warn of the dangers of failing to secure/anchor such screws into the armrests, and designed the product in such a way that performance and protection of minor children was dependent upon the anchoring of the screws into the armrests.

71.     Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc. were on actual and/or constructive notice of the defective and/or dangerous nature of their product, knew

of the dangers associated therewith, and negligently and/or intentionally failed to warn

consumers such as Emilie Wetick and/or other users of the defective and/or dangerous nature

of its product and failed to take other steps reasonably necessary and foreseeable to protect

those who might be exposed thereto, including S.W., a minor child, from harm.

72.    Defendants, therefore, are liable for the following acts and/or omissions as defined by the

Restatement of Torts, Second:

A.    §388.  Chattel Known to be Dangerous for Intended Use.

One who supplies directly or through a third person a chattel for another to use is
subject to liability to those whom the supplier should expect to use the chattel with
the consent of the other or to be endangered by its probable use, for physical harm
caused by the use of the chattel in the manner for which and by a person for whose
use it is supplied, if the supplier:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for
which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its
dangerous condition, and,

© fails to exercise reasonable care to inform them of its dangerous condition or of the facts
which make it likely to be dangerous.

B.    §394.  Chattel known to be Dangerous.

The manufacturer of a chattel which he knows or has reason to know to be, or to be
likely to be, dangerous for use is subject to the liability of a supplier of chattels with
such knowledge.

C.    §395.  Negligent Manufacture of Chattel Dangerous Unless Carefully Made.

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel
which, unless carefully made, he should recognize as involving an unreasonable risk
of causing physical harm to those who use it for a purpose for which the
manufacturer should expect it to be used and to use, is subject to liability for physical
harm caused to them by its lawful use in a manner and for a purpose for which it is
supplied.

D. §402A. Special Liability of Seller of Product of Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not brought the product from or entered into any contractual relation with the seller.

E. §402. B. Misrepresentation by Seller of Chattels to Consumer

One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentations, even though:

(a) it is not made fraudulently or negligently, and

(b) the consumer has not brought the chattel from or entered into any contractual relation with the seller.

44. Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc., by their negligent and/or intentional acts as aforesaid, violated Tennessee Code Annotated §47-2-314 and said acts constitute negligence *per se*, particularly in the design and manufacture of the Turbo HB, specifically, with respect to warnings of the dangerous properties of the placement of screws into the armrest system to children, and the result thereof, being failure, including S.W.. The act provides:

**T.C.A. §47-2-314.  Implied warranty -- Merchantability -- Usage of trade. --**

(1)     Unless excluded or modified (§47-2-316), a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section, the serving for value of food or drink to be consumed either on the premise or elsewhere is a sale.

(2)  Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

(b) In the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purpose for such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmation of fact made on the container or label if any.

(3)     Unless excluded or modified (§47-2-316) other implied warranties may arise from course of dealing or usage of trade.

45.     These Defendants violated Tennessee Code Annotated, §47-2-313, which the Defendants violated by making certain express warranties as shown through advertisements, catalogues and website touting its product and by information provided with the product at or about the time of its sale, which warranties proved to be false and/or that the said Defendants violated or breached.  That act provides:

**T.C.A. §47-2-313.  Express warranties by affirmation, promise, description, sample. --**

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the sellers to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

46.    Plaintiffs aver that there was in existence, T.C.A. §47-2-315, Implied warranty -- Fitness for particular purpose, and that these Defendants breached such implied warranty, as the product, specifically the Turbo HB car/booster seat, as sold to Emilie Wetick, was not fit for the purpose for which it was sold, to ensure and secure the safety for child passengers of the vehicle, including S.W., but was defective and/or dangerous and caused serious injury to S.W., the minor child:

**T.C.A. §47-2-315, Implied warranty -- Fitness for particular purpose. --** Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the sellers' skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose...

47.    These Defendants were negligent, reckless and/or liable for comparative fault in that Defendants failed to properly design, formulate, manufacture, make, monitor, test, warn about, and/or instruct in the use of the product, and as a result, sold the product knowing that it was unreasonably dangerous and/or defective for use by consumers, including children the age and size of S.W., the minor child.

48.     These Defendants are strictly liable for the design, manufacture, and marketing, of the Turbo HB car/booster seat, and placing it into the stream of commerce, when it was defective and/or unreasonably dangerous for its reasonably foreseeable uses.

49.     At the time of the incident described herein and of the manufacture and sale of the product, these Defendants were engaged in the business of designing, manufacturing, assembling, producing, advertising, inspecting, marketing, distributing, and/or selling children's car/booster seats, including the Turbo HB car/booster seat that Emilie Wetick had purchased and in which S.W. was placed, for use by members of the general public.

50.     These Defendants designed, manufactured, assembled, produced, marketed, placed into the stream of commerce, warranted, and sold a defective and/or unreasonably dangerous Turbo HB car/booster seat, knowing that the product would reach ordinary consumers, including Emilie Wetick and S.W., without substantial change in the condition in which it was sold.

51.     At the time the Turbo HB car/booster seat left the Defendants' control, it was defective and/or unreasonably dangerous because the car/booster seat armrest was known to fail, resulting in injury to occupants in a crash. The Defendants failed to warn of the dangers associated with the failure to anchor the screws, resulting in injury to S.W. during the collision.

52.     Prior to the incident described herein, the Turbo HB car/booster seat had not been altered, modified, changed, or damaged and was in the substantially same condition as of the date of its original manufacture, sale, and delivery.

53.     At the time of the incident described herein, Emilie Wetick and S.W. were using the Turbo HB car/booster seat for its intended purpose and in a reasonably foreseeable manner, and her injuries, and damages, which resulted, were reasonably foreseeable by Defendants.

54.     The Turbo HB booster/car seat was defective and/or unreasonably dangerous including, but not limited to, the following ways:

a.      failure to incorporate known safeguards to protect children during foreseeable driving operations;

b.      failure to recall, replace, or repair the car/booster seat which Defendants knew or should have known was defectively designed and/or unreasonably dangerous;

c.      failure to incorporate warnings, or to implement other measures to prevent malfunction;

d.      failure to properly test the Turbo HB car/booster seat;

e.      failure to properly inspect/test/repair/recall/replace the Turbo HB car/booster seat or to require warnings sufficient to prevent injury;

f.      failure to adequately warn the public of the dangerous failure;

g.      failure to design and/or use a safer, existing alternative, design for the Turbo Hb car/booster seat;

h.      failing to warn of the dangers of failing to secure/anchor such screws into the armrests;

i.      Failing to design the product in such a way that the performance of the seat in a collision was not dependent upon screws that were not installed in the assembled seat.

55. The defects existing in the Turbo HB subjected ordinary consumers, including S.W., to an unreasonable risk of harm, and serious injury.

56. Due to the defective and/or unreasonably dangerous design and manufacture of the Turbo HB Car/booster seat, the seat armrest was known to fail, resulting in injury.

57. Defendants knowingly failed to properly test and inspect the Turbo HB car/booster seat before and during design, manufacture and sale of the product to the public and/or knowingly placed the defective and/or unreasonably dangerous product into the stream of commerce.

58. Defendants knew and/or in exercising reasonable care should have known that the Turbo HB car/booster seat was a defective and/or unreasonably dangerous product when being used for its intended purposes and in a reasonably foreseeable manner.

59. A reasonably prudent manufacturer with knowledge of the Turbo HB car/booster seat's dangerous failure of the armrest and lack of safeguards would not have placed the product in the stream of commerce.

60. At the time of the incident described herein, the Turbo HB car/booster seat was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics.

61. As the direct and proximate result of the Defendants' defective and/or unreasonably dangerous product, the Plaintiffs' minor child, S.W., was severely injured, entitling Plaintiffs to recover judgment for compensatory damages in an amount deemed reasonable by the jury.

62. The Turbo HB car/booster seat was unreasonably dangerous and/or defective because these Defendants failed to provide an adequate warning to consumers, operators, and the public, including Plaintiffs, regarding the hazards and risks associated with the reasonable and foreseeable operation of the Turbo HB car/booster seat's armrest protective system.

63. The Turbo HB car/booster seat possessed unreasonably dangerous and/or defective propensities, described hereinabove, which caused severe personal injuries, and these Defendants failed to use reasonable care to provide an adequate warning of the dangerous characteristics of the armrest system to consumers and purchasers of the Turbo HB car/booster seat, including Plaintiffs.

64. Purchasers of the Turbo HB car/booster seat, including Plaintiffs, did not know and that the armrest system was malfunctioning, which had the potential to cause injuries and damages.

65. Plaintiffs' expectations that the Turbo HB car/booster seat would work properly, and that the armrest protective system would not fail in a crash, was the reasonable expectation of an ordinary consumer that would have ordinary knowledge of the Turbo HB car/booster seat's characteristics.

66. As the direct and proximate result of Defendants' failure to warn, Plaintiffs sustained severe injuries, and damages, for which Plaintiffs are entitled to recover judgment in an amount deemed reasonable by the jury for compensatory damages.

## IV.

## <u>DAMAGES</u>

67. Plaintiffs hereby incorporate, in its entirety, each and every paragraph hereinabove by reference as if fully set forth herein.

68. As a direct and proximate result of the aforementioned acts and omissions of all Defendants, under strict liability, and/or negligent and gross negligent acts and omissions as set forth hereinabove, Plaintiffs seek recovery on the behalf of themselves and minor child, S.W., for her injuries and damages, including, but not limited to, the following:

   a. Severe, painful, and permanent injuries to various parts of S.W.'s body, including internal injuries and paralysis;

   b. Permanent injuries including, but not limited to emotional, mental and physical injuries;

   c. Lost economic damages, lost income and lost earning capacity;

   d. Physical pain and suffering, past, present and future;

   e. Emotional pain and suffering, past, present and future;

   f. Medical bills and expenses, past, present and future; and

   g. Loss of enjoyment of life.

69. As a direct and proximate result of the aforementioned acts and/or omissions of the Defendants, Plaintiffs Steven Wetick and Emilie Wetick, individually, have been injured. The Plaintiffs seek recovery from the Defendants for their own injuries and damages, including but not limited to the following:

   a. Medical bills and expenses for treatment of injuries of their minor child, S.W., past, present and future;

   b. Lost wages, past, present and future;

   c. Loss of earning capacity, past, present and future;

   d. Loss of enjoyment of life, past, present and future; and

e.     *Eskin* damages.

**V.**

**PRAYERS FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, as Natural Parents, Guardians and Next Friends of S.W., a minor child, sue the Defendants for her injuries and pray for a judgment against the Defendants, jointly and severally, and each of them, for compensatory damages in the amount of Ten Million Dollars ($10,000,000.00).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, individually, sue the Defendants, jointly and severally, and each of them, for their injuries and prays for a judgment against Defendants for compensatory damages in the amount of Five Million Dollars ($5,000,000.00).

Plaintiffs demand a jury to try these issues herein when joined and reserve the right to amend their complaint and *ad damnum* as investigation of the case continues.

RESPECTFULLY SUBMITTED this August 28, 2017.

GORDON SHAW LAW GROUP, PLLC

BY:     /s/ Amber Griffin Shaw
        AMBER GRIFFIN SHAW
        Attorneys for Plaintiff
        Suite 300, Hotel Lindo Building
        114 West Liberty Avenue
        P.O. Box 846
        Covington, Tennessee  38019-0846
        (901) 476-7100/telephone
        (901) 476-3537/facsimile

ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC
BY: /s/ Darryl D. Gresham
Mr. Darryl D. Gresham (TN #017380)
80 Monroe Ave., Suite 650
Memphis, TN 38103

29

901 763-4200.*Phone*
901-684-1768.*Facsimile*
dgresham@allensummers.com

Attorneys for Plaintiffs

    We acknowledge ourselves as sureties for the costs of this cause not to exceed One Thousand Dollars ($1,000.00).

GORDON SHAW LAW GROUP, PLLC

BY:    /s/ Amber Griffin Shaw

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on August 28, 2017, a true and correct copy of the foregoing document was forwarded by electronic means *via* the Court's electronic filing system to:

Mr. J. Randolph Bibb, Jr. (TN# 09350)
Ms. Whitney Henry Kimerling (TN# 29208)
LEWIS, THOMASON,
KING, KRIEG & WALDROP, P.C.
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
615-259-1349 (Telephone)
615-259-1389 (Facsimile)

*Attorneys for Nissan Motor Company, Ltd.*

Mr. Douglas F. Halijan (TN #16718)
Mr. Charles S. Higgins (TN #030184)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
901-524-5000 (Telephone)
901-524-5024 (Facsimile)
jhalijan@bpjlaw.com
chiggins@pbjlaw.com

*Attorneys for Newell Brands, Inc. and Graco Children's Products, Inc.*

        /s/ Amber Griffin Shaw