## IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN and EMILIE WETICK, individually, and as natural parents, guardians, and next friends of S.W., a minor child, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:17-cv-02278-JPM-tmp |
| v. | ) ) | |
| NISSAN MOTOR COMPANY, LTD., GRACO CHILDREN'S PRODUCTS, INC., NEWELL BRANDS, INC., AND JOHN DOE, | ) ) ) ) ) | **JURY DEMANDED** |
| Defendants. | ) ) | |

## ANSWER OF GRACO CHILDREN'S PRODUCTS, INC. TO PLAINTIFFS' SECOND AMENDED COMPLAINT

COME NOW the Defendant Graco Children's Products, Inc. ("Graco"), by and through

counsel and files its Answer to Plaintiffs' First Amended Complaint.

### I.

### PARTIES, JURISDICTION AND VENUE

1.     The Plaintiffs, Steven Wetick, Emilie Wetick, individually and as natural parents, guardians and next friends of minor child, S.W., at all times pertinent herein, were adult citizens and residents of Tennessee with a mailing address of 1404 Glen Oak, Memphis, TN 38125.

   **ANSWER:**    Graco lacks sufficient information to admit or deny the allegations set

forth in Paragraph 1 and therefore denies same and demands strict proof thereof.

2.     The Defendant Nissan Motor Company, Ltd., a foreign corporation, is located at 1-1 Takashima 1-chrome, Nishi-ku, Yokohama-shi, Kanagawa 220-8686 Japan, and was the manufacturer and/or seller of the Nissan Altima involved herein, and may be served with process under the Hague Service Convention.

      **ANSWER:**   Graco makes no answer to the allegations in Paragraph 2, as said allegations are not directed to Graco.

3.     Defendant Graco Children's Products, Inc., is a corporation with its principal manufacturing address located at 4110 Premier Drive, High Point, NC, 27265, its principal office located at 6655 Peachtree Dunwoody Road, Atlanta, GA 30328-1606, and registered agent located at 40 Technology Parkway South Suite 300, Gwinnett, Norcross, GA 30092, and was the manufacturer and/or seller of the Graco car/booster seat involved herein.

      **ANSWER:**   Graco admits that it is a corporation organized under the laws of the State of Delaware and that its principal place of business is in the State of Georgia.  Graco further admits that its registered agent is located in the State of Georgia.  Further answering, Graco has yet to inspect the car/booster seat involved herein and therefore lacks sufficient information to either admit or deny any involvement in said product. Graco denies all remaining allegations in Paragraph 3.

4.     Defendant Newell Brands, Inc., the parent company of Graco Children's Products, Inc., is a corporation with its principal office located at 6655 Peachtree Dunwoody. Road, Atlanta, GA 30328-1606, and registered agent (Georgia) located at 40 Technology Parkway South Suite 300, Gwinnett, Norcross, GA 30092, registered agent (North Carolina) located at Corporation Service Company, 327 Hillsborough Street, Raleigh, NC 27603-1725, and registered agent (IL) located at Illinois Corporation Service, 801 Adlai Stevenson Dr., Springfield, IL 62703, and was the manufacturer and/or seller of the Graco car/booster seat involved herein.

      **ANSWER:**   Graco admits that Newell Brands, Inc. is its ultimate parent corporation. Further answering, Graco makes no answer to the allegations in Paragraph 4, as said allegations are not directed to Graco.

5.     John Doe is an as yet unidentified third party that manufactured and/or sold the Graco car seat, Turbo HB, to the Weticks for S.W.'s use.

      **ANSWER:**   Graco makes no answer to the allegations in Paragraph 5, as said allegations are not directed to Graco.

6.     The Plaintiffs' causes of action arise as a result of the catastrophic injuries of their child, S.W., suffered as a result of the manufacture and/or sale of defective and/or unreasonably

dangerous products, namely the 2008 Nissan Altima and the Graco car/booster seat, Turbo HB.

**ANSWER:**   Graco denies all allegations directed towards it in Paragraph 6.  Graco makes no answer to the remaining allegations in Paragraph 6, as said allegations are not directed to Graco.

7.      Jurisdiction and venue are appropriate in this Court because the products were placed into the stream of commerce in Tennessee, the wreck and injuries occurred in Tennessee, and diversity jurisdiction exists. The Plaintiffs are residents of Tennessee, Nissan Motor Company, Ltd. is a company headquartered in Japan, Graco Children's Products, Inc. has a registered agent in North Carolina, and Newell Brands, Inc., has a registered agent in Georgia.

**ANSWER:**   Graco admits that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).  Further answering, Graco lacks sufficient information to admit or deny the remaining allegations set forth in Paragraph 7 and therefore denies same and demands strict proof thereof.

## II.

## PREDICATE FACTS

8.      On or about April 21, 2016, at approximately 10:55a.m., Emilie Wetick was the owner and operator of a 2008 Nissan Altima automobile, VIN 2MEFM75W04X611091 with Tennessee registration for the year 2016, license plate number 998SVT.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 8 and therefore denies same and demands strict proof thereof.

9.      Her daughter, S.W., a minor child, was the passenger in said car, which was manufactured and/or sold by the Defendant, Nissan Motor Company, Ltd., a foreign corporation.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 9 and therefore denies same and demands strict proof thereof.

10.     On said date and at the stated time, Victor Yeager was the owner and operator of a 2004 Mercury Grand Marquis with Tennessee registration for the year 2016, license plate number l554DD9.

3

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 10 and therefore denies same and demands strict proof thereof.

11.   On said date and at the stated time, Emilie Wetick was operating her vehicle east bound on Walnut Grove and was completely within the outside lane adjacent to the right hand shoulder.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 11 and therefore denies same and demands strict proof thereof.

12.   Another motorist, Jonathan Halley, was also traveling eastbound on Walnut Grove and was in inside lane for traffic.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 12 and therefore denies same and demands strict proof thereof.

13.   At the time of the wreck herein, Victor Yeager was traveling westbound on Walnut Grove, when he crossed over the median traveling west in the east bound lanes, striking the vehicle driven by Halley and causing his vehicle to be T-boned by Emilie Wetick.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 13 and therefore denies same and demands strict proof thereof.

14.   At all times pertinent herein, Emilie Wetick was operating her vehicle in a prudent and cautious manner and was in no way contributorily or comparatively negligent.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 14 and therefore denies same and demands strict proof thereof.

15.   Minor child S.W. was in the right rear passenger seat of the 2008 Nissan Altima, seated in a Graco Children's Products, Inc. Turbo HB car seat, Mode11908157 JJ, manufactured May 11, 2015.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 15 and therefore demands strict proof thereof.

16.   Defendant Nissan Motor Company, Ltd. knew that it was likely/foreseeable that minor children such as S. W. would be riding as passengers in the rear seat of the 2008 Nissan Altima purchased, owned and operated by Emilie Wetick.

**ANSWER:**    Graco makes no answer to the allegations in Paragraph 16, as said allegations are not directed to Graco.

17.    Defendants Graco Children's Products, Inc. and Newell Brands, Inc. knew that it was likely/foreseeable that minor children such as S.W. would be riding as passengers using the car/booster seat, Graco Turbo HB, in the rear seat of automobiles.

**ANSWER:**    Graco admits only that it designs and sells child restraints, including booster seats, for use in motor vehicles by minor children and their caregivers.  Graco denies all remaining allegations directed towards Graco in Paragraph 17.  Graco makes no answer to those allegations in Paragraph 17 that are directed to Newell Brands, Inc., as said allegations are not directed to Graco.

18.    Defendant Nissan Motor Company, Ltd. knew that it was foreseeable that an automobile such as the 2008 Nissan Altima purchased, owned and operated by Emilie Wetick would be involved in collisions and had a duty to design and manufacture such automobile to be reasonably safe for passengers, including minors such as S.W.

**ANSWER:**    Graco makes no answer to the allegations in Paragraph 18, as said allegations are not directed to Graco.

19.    Defendants Graco Children's Products, Inc. and Newell Brands, Inc. knew that it was foreseeable that a car/booster seat such as the Turbo HB used by S.W. would be involved in collisions and had a duty to design and manufacture such products to be reasonably safe for children, including minors such as S.W.

**ANSWER:**    Graco admits only that it designs and sells child restraints for use in motor vehicles by minor children and their caregivers and that those vehicles are sometimes involved in collisions.  While the remaining allegations in Paragraph 19 call for a legal conclusion that is premature given the lack of discovery at this point in the case, Graco avers that it designed the Turbo Booster® booster seat in a manner consistent with all legal and regulatory requirements and duties, and that such product is reasonably safe for use by minor children and their caregivers.  Graco makes no answer to those allegations in Paragraph 19 that are directed to Newell Brands, Inc., as said allegations are not directed to Graco.

20.     At all times pertinent herein, the Defendant Nissan Motor Company, Ltd. knew that its cargo retention barrier and/or the rear seat back design, including those located in the rear of the 2008 Nissan Altima, were designed for use by children passengers and that the cargo retention barrier and/or the rear seat back design in the rear passenger's seat of the 2008 Nissan Altima, posed a substantial and unjustifiable risk to children the age and size of S.W., including S.W.

**ANSWER:**     Graco makes no answer to the allegations in Paragraph 20, as said allegations are not directed to Graco.

21.     At all times pertinent herein, the Defendants Graco Children's Products, Inc. and Newell Brands, Inc. knew that its car/booster seat Turbo HB, lacked sufficient warnings to notify consumers, including the Weticks, of severe injuries that could occur if the armrests of the car/booster seat failed, and knew that these seats were designed, for use by children passengers and that the car/booster seat posed a substantial and unjustifiable risk to children the age and size of S.W., including S.W.

**ANSWER:**     Graco denies the allegations in Paragraph 21.

22.     Defendant Nissan Motor Company, Ltd. failed to warn of the danger posed to children by the defective cargo retention barrier and/or the rear seat back design in the 2008 Nissan Altima automobile sold to Emilie Wetick.

**ANSWER:**     Graco makes no answer to the allegations in Paragraph 22, as said allegations are not directed to Graco.

23.     Defendants Graco Children's Products, Inc. and Newell Brands, Inc. failed to warn of the danger posed to children by the Turbo HB booster/car seat sold to Emilie Wetick for S.W.'s use.

**ANSWER:**     Graco denies the allegations in Paragraph 23.  Graco makes no answer to those allegations in Paragraph 23 that are directed to Newell Brands, Inc., as said allegations are not directed to Graco.

24.     At all times pertinent herein, S.W., a minor child, was restrained in the right rear passenger seat by the car/booster seat Turbo HB, manufactured and/or sold by Graco Children's Products, Inc., and/or Newell Brands, Inc. She was secured by it and the lap and shoulder harness of the factory installed seat belt/safety restraint system of the 2008 Nissan Altima manufactured by the Defendant Nissan Motor Company, Ltd.

**ANSWER:**     Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 24 and therefore denies same and demands strict proof thereof.  Graco makes

no answer to those allegations in Paragraph 24 that are directed to the Nissan defendants, as said

allegations are not directed to Graco.

25.     Plaintiffs aver that the injuries and damages suffered by S.W., a minor child, were caused by the defective and/or unreasonably dangerous products manufactured and/or sold by the defendants, Nissan Motor Company, Ltd. in that the cargo retention barrier and/or the rear seat back design by its design and/or installation in the 2008 Nissan Altima was inappropriate, defective and/or unreasonably dangerous for S.W.  More specifically, the rear split bench seat located in the 2008 Nissan Altima failed to remain latched in a foreseeable collision, which impacted the geometry of the seat and seat belt on the occupants of the vehicle, including S.W. The seat back failure caused great force to be exerted on S.W.'s car seat, resulting in the movement of the car seat.  The seat back failed to remain upright and latched during the collision, and instead became unlatched, resulting in a higher likelihood of injury for the occupants of the vehicle, including S.W.

        **ANSWER:**   Graco  makes  no  answer  to  the  allegations  in  Paragraph 25, as said

allegations  are  not  directed  to  Graco.   To the extent Paragraph 25 can be construed to make

allegations against Graco, those allegations are denied.

26.     Plaintiffs aver that the injuries and damages suffered by S.W., a minor child, were caused by the defective and/or unreasonably dangerous products manufactured and/or sold by the Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., in that the Turbo HB booster/car seat, by its design and/or installation, was inappropriate, defective and/or unreasonably dangerous for S.W.  More specifically, the Graco car seat was designed and manufactured in such a way that its performance was dependent on the anchoring of two screws in the armrests of the seat, which were not placed in the armrests at the time of packaging/delivery.  Graco failed to warn of the dangers of failing to secure/anchor such screws into the armrests of the child seat, and the existing warnings were grossly inadequate for the dangers present related to the screws.

        **ANSWER:**   Graco denies the allegations of the first sentence of Paragraph 26.  As to

the remaining allegations of Paragraph 26, Graco admits that certain of its products require some

assembly  by  the  purchaser,  which  may  include  the  anchoring  of  screws,  and  that  such

requirements  are  fully  disclosed  to  purchasers  in  or  on  the  packaging  or  instructions

accompanying the product, but denies all other allegations of this Paragraph.

27.     S.W., the minor child, was injured by the defective or unreasonably dangerous cargo retention barrier and/or the rear seat back design of the 2008 Nissan Altima, manufactured and produced by the Defendant, Nissan Motor Company, Ltd. and being used for its intended use, to protect the occupants of a vehicle in a crash. Emilie Wetick

7

was operating said 2008 Nissan Altima as directed by Defendant, Nissan Motor Company, Ltd. or its agents for its foreseeable and recommended use as a passenger automobile and the cargo retention barrier and/or the rear seat back design was being used as a might be reasonably expected and as directed and/or foreseen by Defendant, Nissan Motor Company, Ltd. and/or its agents.

**ANSWER:**   Graco makes no answer to the allegations in Paragraph 27, as said allegations are not directed to Graco.  To the extent Paragraph 27 can be construed to make allegations against Graco, those allegations are denied.

28.   S.W., the minor child, was injured by the defective or unreasonably dangerous Turbo HB car/booster seat, manufactured and produced by the Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc., and being used for its intended use, to protect S.W. in the event of a crash. Emilie Wetick was operating the Turbo HB as was intended by Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., or their agents for its foreseeable and recommended use as a car/booster seat, and the Turbo HB was being used as a might be reasonably expected and as directed and/or foreseen by Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., and/or their agents.

**ANSWER:**   Graco denies the allegations in Paragraph 28.

29.   The cargo retention barrier and/or the rear seat back design system of the 2008 Nissan Altima was defective and/or unreasonably dangerous to those reasonably expected to be exposed to it, including S.W., a minor child, and was improperly designed, manufactured, or labeled in such a way causing it to be unreasonably dangerous or defective.  More specifically, the seat back failed to remain upright, secured and latched during the collision, resulting in injuries to S.W., the minor child, who was the passenger sitting directly in front of the seat back.

**ANSWER:**   Graco makes no answer to the allegations in Paragraph 29, as said allegations are not directed to Graco.  To the extent Paragraph 29 can be construed to make allegations against Graco, those allegations are denied.

30.   The car/booster seat Turbo HB was defective and/or unreasonably, dangerous to those reasonably expected to be exposed to it, including S.W., a minor child, and was improperly designed, manufactured, or labeled in such a way causing it to be unreasonably dangerous or defective.  More specifically there were no screws located in the armrests of the Turbo HB seat as were required for safety.  The car seat was designed and/or manufactured in such a way that its performance was dependent upon the anchoring of those screws.  The armrest failed to remain attached to the seat, and detached during the foreseeable collision, failing to protect the occupant of the seat, S.W., and resulting in injuries to her.  The absence of the armrest caused S.W. to experience

forces and movement that would have been restricted had the car seat properly worked, and further caused S.W. to be injured in ways that she, more likely than not, would not have been had the car seat worked properly.

**ANSWER:**   Graco denies the allegations in Paragraph 30.

31.    The subject 2008 Nissan Altima was manufactured, sold, distributed, purchased, and used by Emilie Wetick in an unaltered and unchanged condition.

**ANSWER:**   Graco makes no answer to the allegations in Paragraph 31, as said allegations are not directed to Graco.  To the extent Paragraph 31 can be construed to make allegations against Graco, Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 31 and therefore denies same.

32.    The subject Turbo HB car/booster seat was manufactured, sold, distributed, purchased, and used by S.W. in an unaltered and unchanged condition.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 32 and therefore denies same and demands strict proof thereof.

33.    The 2008 Nissan Altima, purchased and used as described herein, was less than ten (10) years old.

**ANSWER:**   Graco makes no answer to the allegations in Paragraph 33, as said allegations are not directed to Graco.  To the extent Paragraph 33 can be construed to make allegations against Graco, Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 33 and therefore denies same.

34.    The Turbo HB car/booster seat, purchased and used as described herein, was less than ten (10) years old.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 34 and therefore denies same and demands strict proof thereof.

35.    As a result of the defective and/or unreasonably dangerous nature of the cargo retention barrier and/or the rear seat back design system in the 2008 Nissan Altima manufactured and/or sold by Defendant, Nissan Motor Company, Ltd. Plaintiff S.W., a minor child, suffered severe and permanent injuries and other damages as set forth more fully hereinafter.

**ANSWER:**   Graco makes no answer to the allegations in Paragraph 35, as said allegations are not directed to Graco.   To the extent Paragraph 35 can be construed to make allegations against Graco, those allegations are denied.

36.    As a result of the defective and/or unreasonably dangerous nature of the Turbo HB car/booster seat, manufactured and/or sold by Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., Plaintiff S.W., a minor child, suffered severe and permanent injuries and other damages as set forth more fully hereinafter.

**ANSWER:**   Graco denies the allegations in Paragraph 36.

### III.

### A.

### CAUSES OF ACTION AGAINST DEFENDANTS, NISSAN MOTOR COMPANY. LTD.

Count III. A is not directed to Graco, therefore Graco makes no answer to Count III.A. or Paragraphs 37-66 contained therein.   To the extent Count III. A can be construed to make allegations against Graco, those allegations are denied.

### B.

### CAUSES OF ACTION AGAINST DEFENDANTS, GRACO CHILDREN'S PRODUCTS, INC. AND/OR NEWELL BRANDS INC.

67.    Plaintiffs hereby incorporate, in its entirety, each and every paragraph hereinabove by reference as if fully set forth herein.

**ANSWER:**   Graco incorporates, in its entirety, each and every answer to each and every paragraph hereinabove by reference as if fully set forth herein.

68.    Plaintiffs, individually and as natural parents, guardians and next friends of S.W., a minor child, sue the Defendants, Graco Children's Products, Inc., and/or Newell Brands, Inc., under the theories of negligence, comparative fault, gross negligence, misrepresentation, breach of express and implied warranties of merchantability and fitness for a particular purpose and, further, avers that said Defendants are strictly liable, all pursuant to T.C.A. §29-28-101, et. seq., for the personal injuries, medical expenses; permanent impairment and disfigurement, loss of the enjoyment of life, lost wages, and pain and suffering, mental, physical and emotional, past and future complained of herein.

10

**ANSWER:**   Graco admits that Plaintiffs have brought this action against it and other parties under various theories of liability.   Further answering, Graco denies the remaining allegations in Paragraph 68, including specifically that it is liable to Plaintiffs for any alleged conduct or defect in one or more of its products.

69.   Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc. are strictly liable for injuries and losses suffered by the Plaintiffs' minor child, S.W., in that the Turbo HB car/booster seat manufactured by these Defendants was a defective and/or unreasonably dangerous product when sold and, further, Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc. insufficiently warned the purchasers and users thereof of the danger of the failure of the Turbo HB car/booster seat to children the size of S.W., the minor child.  More specifically, the seat required screws in the armrests to be placed, and performance of the seat was dependent upon the anchoring of these two screws in the armrests. The Defendants' warning of the dangers of failing to secure/anchor these screws into the armrests were woefully and grossly inadequate.  As a result, the armrest became disconnected during the collision, failing to protect S.W. from injury due to its absence, and as a result, S.W. experienced significant forces that otherwise would have been restricted, and suffered injuries that she more likely than not, would have avoided with proper protection.

**ANSWER:**   Graco denies the allegations of the first sentence in Paragraph 69. Regarding the remaining allegations in Paragraph 69, Graco admits that certain of its products require some assembly by the purchaser, which may include the anchoring of screws, and that such requirements are fully disclosed to purchasers in or on the packaging or instructions accompanying the product, but denies all other allegations of this Paragraph.

70.   Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc., though promotional literature, advertising and instructions to users, promoted the product and designs as being safe for use by children when the same was untrue and known by Defendants to be untrue, the failure of the Turbo HB armrest and system being known to them, and having been designed and/or manufactured in such a manner to pose an unreasonable danger to children such as S.W., and, therefore, are liable to the Plaintiffs for their negligent and/or intentional misrepresentation.  Defendants failed to warn of the dangers of failing to secure/anchor such screws into the armrests, and designed the product in such a way that performance and protection of minor children was dependent upon the anchoring of the screws into the armrests.

**ANSWER:**   Graco denies the allegations in Paragraph 70.

71.     Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc. were on actual and/or constructive notice of the defective and/or dangerous nature of their product, knew of the dangers associated therewith, and negligently and/or intentionally failed to warn consumers such as Emilie Wetick and/or other users of the defective and/or dangerous nature of its product and failed to take other steps reasonably necessary and foreseeable to protect those who might be exposed thereto, including S.W., a minor child, from harm.

**ANSWER:**    Graco denies the allegations in Paragraph 71.  .

72.     Defendants, therefore, are liable for the following acts and/or omissions as defined by the Restatement of Torts, Second:

A.     §388. Chattel Known to be Dangerous for Intended Use.

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:

   (a)     knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and,

   (b)     has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and,

   (c)     fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

B.     §394. Chattel known to be Dangerous.

The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge.

C.     §395. Negligent Manufacture of Chattel Dangerous Unless Carefully Made.

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

D.     §402A. Special Liability of Seller of Product of Physical Harm to User or Consumer.

(1)     One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if

    (a)     the seller is engaged in the business of selling such a product, and

    (b)     it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)     The rule stated in Subsection (1) applies although

    (a)     the seller has exercised all possible care in the preparation and sale of his product, and

    (b)     the user or consumer has not brought the product from or entered into any contractual relation with the seller.

E.     §402. B. Misrepresentation by Seller of Chattels to Consumer

One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentations, even though:

    (a)     it is not made fraudulently or negligently, and

    (b)     the consumer has not brought the chattel from or entered into any contractual relation with the seller.

**ANSWER:**     Graco denies that it is liable for any act or omission, or on any theory of recovery, alleged in this paragraph.

73.     (44)[1] Defendants Graco Children's Products, Inc., and/or Newell Brands, Inc., by their negligent and/or intentional acts as aforesaid, violated Tennessee Code Annotated §47-2-314 and said acts constitute negligence *per se*, particularly in the design and manufacture of the Turbo HB, specifically, with respect to warnings of the dangerous properties of the placement of screws into the armrest system to children, and the result thereof, being failure, including S.W.  The act provides:

**T.C.A. §47-2-314. Implied warranty -- Merchantability -- Usage of trade. --**

---

[1] The individually-numbered allegations of the Second Amended Complaint are erroneously numbered beginning with the first paragraph following Paragraph 72.  In this Answer, Graco has correctly numbered all paragraphs subsequent to Paragraph 72 but, for ease of reference, will show in parentheses the number of each Paragraph numbered in error in the Second Amended Complaint.

(1)     Unless excluded or modified (§47-2-316), a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, the serving for value of food or drink to be consumed either on the premise or elsewhere is a sale.

(2)     Goods to be merchantable must be at least such as:

(a)     pass without objection in the trade under the contract description; and

(b)     In the case of fungible goods, are of fair average quality within the description; and

(c)     are fit for the ordinary purpose for such goods are used; and

(d)     run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e)     are adequately contained, packaged, and labeled as the agreement may require; and

(f)     conform to the promises or affirmation of fact made on the container or label if any.

(3)     Unless excluded or modified (§47-2-316) other implied warranties may arise from course of dealing or usage of trade.

**ANSWER:**     Graco admits that Plaintiffs have accurately quoted from portions of the Tennessee Code, but denies that it is liable for any act or omission, or on any theory of recovery, alleged in this paragraph or that it has violated the provisions of the Tennessee Code.

74.     (45) These Defendants violated Tennessee Code Annotated, §47-2-313, which the Defendants violated by making certain express warranties as shown through advertisements, catalogues and website touting its product and by information provided with the product at or about the time of its sale, which warranties proved to be false and/or that the said Defendants violated or breached. That act provides:

**T.C.A. §47-2-313. Express warranties by affirmation, promise, description, sample.**

(1)     Express warranties by the seller are created as follows:

(a)     Any affirmation of fact or promise made by the sellers to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)     Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c)     Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2)    It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

**ANSWER:**     Graco admits that Plaintiffs have accurately quoted from portions of the

Tennessee Code, but denies that it is liable for any act or omission, or on any theory of recovery,

alleged in this paragraph or that it has violated any provision of the Tennessee Code.

75.    (46) Plaintiffs aver that there was in existence, T.C.A. §47-2-315, Implied warranty -- Fitness for particular purpose, and that these Defendants breached such implied warranty, as the product, specifically the Turbo HB car/booster seat, as sold to Emilie Wetick, was not fit for the purpose for which it was sold, to ensure and secure the safety for child passengers of the vehicle, including S.W., but was defective and/or dangerous and caused serious injury to S.W., the minor child:

**T.C.A. §47-2-315, Implied warranty -- Fitness for particular purpose. --** Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the sellers' skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose...

**ANSWER:**     Graco admits that Plaintiffs have accurately quoted from portions of the

Tennessee Code, but denies that it is liable for any act or omission, or on any theory of recovery,

alleged in this paragraph or that it has violated the provisions of the Tennessee Code.

76.    (47) These Defendants were negligent, reckless and/or liable for, comparative fault in that Defendants failed to properly design, formulate, manufacture, make, monitor, test, warn about, and/or instruct in the use of the product, and as a result, sold the product knowing that it was unreasonably dangerous and/or defective for use by consumers, including children the age and size of S.W., the minor child.

**ANSWER:**   Graco denies the allegations in Paragraph 76 (47) in so far as they are directed to Graco.  Graco makes no answer to those allegations in Paragraph 76 (47) that are directed to the other Defendants named in this lawsuit.

77.    (48) These Defendants are strictly liable for the design, manufacture, and marketing, of the Turbo HB car/booster seat, and placing it into the stream of commerce, when it was defective and/or unreasonably dangerous for its reasonably foreseeable uses.

**ANSWER:**   Graco denies the allegations in Paragraph 77 (48).

78.    (49) At the time of the incident described herein and of the manufacture and sale of the product, these Defendants were engaged in the business of designing, manufacturing, assembling, producing, advertising, inspecting, marketing, distributing, and/or selling children's car/booster seats, including the Turbo HB car/booster seat that Emilie Wetick had purchased and in which S.W. was placed, for use by members of the general public,

**ANSWER:**   Graco admits only that it designs and sells child restraints for use in motor vehicles by minor children and their caregivers.  Graco denies all remaining allegations directed towards Graco in Paragraph 78 (49).

79.    (50) These Defendants designed, manufactured, assembled, produced, marketed, placed into the stream of commerce, warranted, and sold a defective and/or unreasonably dangerous Turbo HB car/booster seat, knowing that the product would reach ordinary consumers, including Emilie Wetick and S.W., without substantial change in the condition in which it was sold.

**ANSWER:**   Graco denies the allegations in Paragraph 79 (50).

80.    (51) At the time the Turbo HB car/booster seat left the Defendants' control, it was defective and/or unreasonably dangerous because the car/booster seat armrest was known to fail, resulting in injury to occupants in a crash.  The Defendants failed to warn of the dangers associated with the failure to anchor the screws, resulting in injury to S.W. during the collision.

**ANSWER:**   Graco denies the allegations in Paragraph 80 (51).

81.    (52) Prior to the incident described herein, the Turbo HB car/booster seat had not been altered, modified, changed, or damaged and was in the substantially same condition as of the date of its original manufacture, sale, and delivery.

**ANSWER:**   Graco lacks sufficient information to admit or deny the allegations set forth in Paragraph 81 (52) and therefore denies same and demands strict proof thereof.

16

82.     (53) At the time of the incident described herein, Emilie Wetick and S.W. were using the Turbo HB car/booster seat for its intended purpose and in a reasonably foreseeable manner, and her injuries, and damages, which resulted, were reasonably foreseeable by Defendants.

**ANSWER:**     Graco denies the allegations in Paragraph 82 (53).

83.     (54) The Turbo HB booster/car seat was defective and/or unreasonably dangerous including, but not limited to, the following ways:

       (a)     failure to incorporate known safeguards to protect children during foreseeable driving operations;

       (b)     failure to recall, replace, or repair the car/booster seat which Defendants knew or should have known was defectively designed and/or unreasonably dangerous;

       (c)     failure to incorporate warnings, or to implement other measures to prevent malfunction;

       (d)     failure to properly test the Turbo HB car/booster seat;

       (e)     failure to properly inspect/test/repair/recall/replace the Turbo HB car/booster seat or to require warnings sufficient to prevent injury;

       (f)     failure to adequately warn the public of the dangerous failure;

       (g)     failure to design and/or use a safer, existing alternative, design for the Turbo Hb car/booster seat.

       (h)     Failing to warn of the dangers of failing to secure/anchor such screws into the armrests;

       (i)     Failing to design the product in such a way that the performance of the seat in a collision was not dependent upon screws that were not installed in the assembled seat.

**ANSWER:**     Graco denies the allegations in Paragraph 83 (54), including each and

every subparagraph thereof.

84.     (55) The defects existing in the Turbo HB subjected ordinary consumers, including S.W., to an unreasonable risk of harm, and serious injury.

**ANSWER:**     Graco denies the allegations in Paragraph 84 (55).

85.     (56) Due to the defective and/or unreasonably dangerous design and manufacture of the Turbo HB Car/booster seat, the seat armrest was prone to fail, resulting in injury.

**ANSWER:**   Graco denies the allegations in Paragraph 85 (56).

86.     (57) Defendants knowingly failed to properly test and inspect the Turbo HB car/booster seat before and during design, manufacture and sale of the product to the public and/or knowingly placed the defective and/or unreasonably dangerous product into the stream of commerce.

**ANSWER:**   Graco denies the allegations in Paragraph 86 (57) in so far as they are

directed to Graco.  Graco makes no answer to those allegations in Paragraph 86 (57) that are

directed to the other defendants named in this lawsuit.

87.     (58) Defendants knew and/or in exercising reasonable care should have known that the Turbo HB car/booster seat was a defective and/or unreasonably dangerous product when being used for its intended purposes and in a reasonably foreseeable manner.

**ANSWER:**   Graco denies the allegations in Paragraph 87 (58) in so far as they are

directed to Graco.  Graco makes no answer to those allegations in Paragraph 87 (58) that are

directed to the other defendants named in this lawsuit.

88.     (59) A reasonably prudent manufacturer with knowledge of the Turbo HB car/booster seat's dangerous failure of the armrest and lack of safeguards would not have placed the product in the stream of commerce.

**ANSWER:**   Graco denies the allegations in Paragraph 88 (59).

89.     (60) At the time of the incident described herein, the Turbo HB car/booster seat was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics.

**ANSWER:**   Graco denies the allegations in Paragraph 89 (60).

90.     (61) As the direct and proximate result of the Defendants' defective and/or unreasonably dangerous product, the Plaintiffs' minor child, S.W., was severely injured, entitling Plaintiffs to recover judgment for compensatory damages in an amount deemed reasonable by the jury.

**ANSWER:**   Graco denies the allegations in Paragraph 90 (61).

91.     (62) The Turbo HB car/booster seat was unreasonably dangerous and/or defective because these Defendants failed to provide an adequate warning to consumers, operators, and the public, including Plaintiffs, regarding the hazards and risks associated with the

reasonable and foreseeable operation of the Turbo HB car/booster seat's armrest protective system.

**ANSWER:**   Graco denies the allegations in Paragraph 91 (62).

92.   (63) The Turbo HB car/booster seat possessed unreasonably dangerous and/or defective propensities, described hereinabove, which caused severe personal injuries, and these Defendants failed to use reasonable care to provide an adequate warning of the dangerous characteristics of the armrest system to consumers and purchasers of the Turbo HB car/booster seat, including Plaintiffs.

**ANSWER:**   Graco denies the allegations in Paragraph 92 (63).

93.   (64) Purchasers of the Turbo HB car/booster seat, including Plaintiffs, did not know and that the armrest system was malfunctioning, which had the potential to cause injuries and damages.

**ANSWER:**   Graco denies the allegations in Paragraph 93 (64) that the armrest system

"was malfunctioning" and that it had the potential to cause injuries and damages.  Further

answering, Graco denies the remaining allegations set forth in Paragraph 93 (64).

94.   (65) Plaintiffs' expectations that the Turbo HB car/booster seat would work properly, and that the armrest protective system would not fail in a crash, was the reasonable expectation of an ordinary consumer that would have ordinary knowledge of the Turbo HB car/booster seat's characteristics.

**ANSWER:**   Graco denies the allegations in Paragraph 94 (65) that the Turbo HB's

armrest did not work properly and could fail in a crash.  Further answering, Graco denies the

remaining allegations set forth in Paragraph 94 (65).

95.   (66) As the direct and proximate result of Defendants' failure to warn, Plaintiffs sustained severe injuries, and damages, for which Plaintiffs are entitled to recover judgment in an amount deemed reasonable by the jury for compensatory damages.

**ANSWER:**   Graco denies the allegations in Paragraph 95 (66).

# IV.

## <u>DAMAGES</u>

96. (67) Plaintiffs hereby incorporate, in its entirety, each and every paragraph hereinabove by reference as if fully set forth herein.

   **<u>ANSWER:</u>**   Graco incorporates, in its entirety, each and every answer to each and

every paragraph hereinabove by reference as if fully set forth herein.

97. (68) As a direct and proximate result of the aforementioned acts and omissions of all Defendants, under strict liability, and/or negligent and gross negligent acts and omissions as set forth hereinabove, Plaintiffs seek recovery on the behalf of themselves and minor child, S.W., for her injuries and damages, including, but not limited to, the following:

   (a)   Severe, painful, and permanent injuries to various parts of S.W.'s body, including internal injuries and paralysis;

   (b)   Permanent injuries including, but not limited to emotional, mental and physical injuries;

   (c)   Lost economic damages, lost income and lost earning capacity;

   (d)   Physical pain and suffering, past, present and future;

   (e)   Emotional pain and suffering, past, present and future;

   (f)   Medical bills and expenses, past, present and future; and

   (g)   Loss of enjoyment of life.

   **<u>ANSWER:</u>**   Graco denies the allegations in Paragraph 97 (68).

98. (69) As a direct and proximate result of the aforementioned acts and/or omissions of the Defendants, Plaintiffs Steven Wetick and Emilie Wetick, individually, have been injured. The Plaintiffs seek recovery from the Defendants for their own injuries and damages, including but not limited to the following:

   (a)   Medical bills and expenses for treatment of injuries of their minor child, S.W., past, present and future;

   (b)   Lost wages, past, present and future;

   (c)   Loss of earning capacity, past, present and future;

      (d)     Loss of enjoyment of life, past, present and future; and

      (e)     Eskin damages

**ANSWER:**    Graco denies the allegations in Paragraph 98 (69).

**WHEREFORE,** Graco demands judgment in its favor and against Plaintiffs, together with the costs and expenses of this action, along with such further and additional relief as this Honorable Court shall deem just and appropriate.

## JURY DEMAND

Graco hereby demands a trial by jury on all issues so triable.

## AFFIRMATIVE OR OTHER DEFENSES

## FIRST DEFENSE

Graco asserts the principles of comparative fault as adopted by the Tennessee Supreme Court in *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn. 1992). Graco asserts that the damages and injuries allegedly sustained by Plaintiff are the result of the conduct out of Graco's control. Plaintiffs' alleged damages and injuries may be the direct and proximate result of the negligence of the Plaintiff Emilie Wetick for failing to drive in accordance with the standard of care, Plaintiffs Steven and Emilie Wetick for failing to properly use the subject child restraint, third-party Victor Yeager for failing to drive in accordance with the standard of care by crossing into/over the median on Walnut Grove, third-party Jonathan Halley for failing to drive in accordance with the standard of care by failing to avoid a collision with Mr. Yeager, Defendants Nissan Motor Company Ltd. and/or Nissan North America, Inc. (collectively, "Nissan") as alleged in Plaintiffs' Complaint against these Defendants, or other unknown third parties. Therefore, any recovery against Graco should be reduced in proportion to the fault attributable to Plaintiffs, Mr. Yeager Mr. Halley, Nissan or other unknown third-parties. To the extent fault attributable to

Plaintiff exceeds the fault attributable to Graco, Plaintiff is barred from recovering against Graco.

## SECOND DEFENSE

Graco complied with all governmental regulations, whether federal or state, and any applicable administrative regulations existing at the time the product in question was manufactured.  Therefore, pursuant to Tenn. Code Ann. § 29-28-104, there is a rebuttable presumption that the product is not in an unreasonably dangerous condition.

## THIRD DEFENSE

At all times material hereto, there was in full force and effect in the State of Tennessee, the Tennessee Products Liability Act of 1978, Tenn. Code Ann. § 29-28-102 et seq.  This Defendant is entitled to all presumptions and defenses contained in said Act and relies as a bar to the Plaintiffs' cause of action upon the terms and provisions of, including but not limited to, Tenn. Code Ann. §§ 29-28-103, (Limitation of Actions); 29-28-104 (Compliance with Government Standards--Rebuttable Presumption); 29-28-105 (Determination of Defective or Dangerous Condition); 29-28-106 (Seller's Liability); and 29-28-108 (Product Altered or Abnormally Used).

## FOURTH DEFENSE

This Defendant relies upon the doctrines of comparative fault, misuse of Defendant's product, intervening cause and upon applicable statutes of limitations and repose, and in particular, without limitation, upon Tenn. Code Ann. § 28-3-104 and Tenn. Code Ann. § 47-2-725.

## FIFTH DEFENSE

Graco relies upon all defenses available to it under the Tennessee Products Liability Act of 1978 and the Tennessee common law of products liability.

## SIXTH DEFENSE

The acts, injuries, and/or damages complained of may have been proximately caused by other superseding, intervening, culpable acts of Plaintiffs, third parties or entities other than Graco and over whom Graco has or had no control, or right of control, and for whom Graco is not responsible.

## SEVENTH DEFENSE

Plaintiffs' injuries were caused or contributed to, in whole or in part, by the fact that Defendant's products were improperly assembled, maintained and/or abnormally used, were misused, or were used in a manner or for the purpose not intended by the Defendant and contrary to any instruction of safe practices, over all of which Defendant has no control. Such actions on the part of the Plaintiffs or others constitute the sole proximate cause of, or a contributing, intervening, or superseding, cause of damages alleged in the Complaint.

## EIGHTH DEFENSE

Plaintiff's injuries were caused or contributed to, in whole or part, by the fact that Plaintiffs Steven and/or Emilie Wetick, or other purchasers or users of the car seat in question, failed to follow or abide by the instructions and/or warnings included in or with the packaging for the product.

**NINTH DEFENSE**

Plaintiffs are not entitled to recover in that Plaintiff's fault in causing the Plaintiffs' alleged damages and injuries is not less than the combined fault of all alleged tortfeasors.

**TENTH DEFENSE**

Defendant specifically avers that it did not contribute to the Plaintiffs' alleged injury or, in the alternative, that its contribution to the alleged injury is so *de minimis* as to be legally insignificant.

**ELEVENTH DEFENSE**

The product described by the Plaintiffs in the Complaint may have been substantially altered after it left the possession and/or control of this Defendant, this substantial alteration being the proximate cause of the injuries and/or damages allegedly sustained by the Plaintiffs.

**TWELFTH DEFENSE**

Plaintiffs were aware of, and/or had knowledge of, and/or should have had knowledge of, any alleged defect and should have taken measures to avoid the accident complaint of and the subsequent injury.

**THIRTEENTH DEFENSE**

The alleged defect constituted an open and obvious danger to users of the product, including the Plaintiffs.  No duty to warn was, therefore, imposed on the Defendant.

**FOURTEENTH DEFENSE**

Graco is entitled to all presumptions and defenses available to it under the Uniform Commercial Code, as in effect in Tennessee, Tenn. Code Ann. § 47-1-101, et seq.

**FIFTEENTH DEFENSE**

Plaintiffs' claimed damages may be barred or reduced for their failure to mitigate past

and future medical expenses incurred by or on behalf of S.W. through means reasonably available to these Plaintiffs.

## SIXTEENTH DEFENSE

Plaintiffs' claims for damages are limited by the statutory caps set forth in the Tennessee Civil Justice Act of 2011, Tenn. Code Ann. § 29-39-101 to -104.

## SEVENTEENTH DEFENSE

Graco reserves the right to assert additional affirmative or other defenses should the proof as revealed during discovery establish a basis for any such defenses.

Dated this 13th day of September, 2017.            Respectfully submitted,

/s/ Douglas F. Halijan
Douglas F. Halijan (BPR # 16718)
Charles S. Higgins (BPR # 030184)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN  38103
Telephone:  (901) 524-5000
Facsimile:  (901)524-5024
dhalijan@bpjlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was forwarded to all counsel of record via the Court's electronic filing system this 13th day of September, 2017.

/Douglas F. Halijan